378 S.E.2d 583 (1989)
Philip E. WALKER
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF RALEIGH and Howard S. Kohn, Substitute Trustee.
In the Matter of the Foreclosure of a Deed of Trust executed by Philip E. WALKER and Wife, Laura P. Walker Dated July 1, 1983 and Recorded in Book 426, Page 299, in the Orange County Registry by Howard S. Kohn, Substitute Trustee.
No. 8815SC888.
Court of Appeals of North Carolina.
May 2, 1989.
Northen, Blue, Little, Rooks, Thibaut & Anderson by John A. Northen and Jo Ann Ragazzo Woods, Chapel Hill, for plaintiff-appellant.
Petree Stockton & Robinson by Kenneth S. Broun and Gary K. Joyner, Raleigh, for defendant-appellee First Federal Sav. and Loan Ass'n of Raleigh.
JOHNSON, Judge.
This is an appeal from a judgment decreeing that plaintiff is not entitled to a reduction in the principal due and owing on a note, and an order allowing foreclosure *584 of the property securing the note to proceed.
The following real estate transactions form the basis for the action underlying this appeal. On 1 July 1983, plaintiff, Philip E. Walker, executed a purchase money promissory note (Bennett Note) for $308,500 to Harvey D. Bennett, Mildred B. Blackwood, Lucille B. Ray and Placid B. Highfill as part of the purchase price for 36.79 acres of real property. The promissory note was secured by 31.79 acres of the tract, leaving five acres of the tract unencumbered by the Bennett Note. The parties also executed a release agreement which specified the method by which the seller would release portions of the tract from the note as the buyer reduced the outstanding principal.
On 1 October 1984, plaintiff transferred the entire tract to the Martin Development Group, Inc. (MDG). As part of the purchase price, MDG granted a promissory note (Escrow note) for $144,245 to certain escrow agents secured by a purchase money deed of trust on the entire 36.79 acre tract. This Escrow Note then became the second lien on 31.79 acres of the tract and a first lien on the five acres unencumbered by the Bennett Note. A second purchase money promissory note for $355,000 (Walker Note) was granted to plaintiff Walker and was secured by a purchase money deed of trust on the entire tract. Thus, the Walker deed of trust became a third lien on 31.79 acres of the tract and a second lien on the five acres unencumbered by the Bennett Note. The Bennett release agreement which provided for the release of property from the note as the principal was reduced was incorporated into both the Walker and Escrow deeds of trust.
Sometime in December 1984, MDG and defendant, First Federal Savings and Loan entered into a loan agreement whereby MDG would borrow money for development of the property. To secure the future advances, MDG executed a note and deed of trust encumbering 11.045 acres of the tract, including the five acres unencumbered by the Bennett Note and the 6.045 acres which adjoined them, to First Federal. This 11.045 acre tract was then released from both the Escrow and Walker deeds of trust, resulting in the elevation of defendant First Federal to first lienholder on the five acres exempted from the Bennett Note, and second lienholder on the remaining 6.045 acres, second to the Bennett Note.
Defendant First Federal began to make advances as per the loan agreement with MDG, advancing at least $326,000 between December 1984 and January 1988. Defendant then became insecure concerning the repayment of the loan, recognizing that the amount which it had already advanced was the total value of the entire 11.045 acre tract, for which it held a first lien on only five acres. This initial insecurity was compounded by the fact that MDG had not met its obligation to pay $79,380.13 due under the Bennett Note on 31 December 1987. This note was the first lien on 6.045 acres of the 11.045 acre tract which was used to secure the advances made by defendant First Federal, although no foreclosure action was instituted by the Bennetts, et al.
In an attempt to insure repayment, defendant purchased the Bennett Note which it received by assignment on 5 January 1988. Then on 27 January 1988, in full satisfaction of the development loan to MDG, defendant had MDG convey the 11.045 acre tract to defendant's wholly owned subsidiary, First Tricorp, Inc. Then, as new holder of the Bennett Note, and owner of the 11.045 acre tract through its subsidiary, defendant released 6.045 acres from the note. The property released was the portion of the entire tract which secured the development loan which was subject to the Bennett Note.
As a result of the transactions, First Federal, through its subsidiary, became the owner of 11.045 acres of the original tract; the $326,000 development loan to MDG was satisfied, and the Bennett Note, now held by First Federal, encumbered 25 acres of the original 36 acre tract. Also, as a result of these transactions, plaintiff's interest in the entire tract amounted to that of junior lienholder on a note secured by 25.75 acres of the tract now owned by Walker's corporation *585 (MDG). He held no equity of redemption in the 11.045 acres owned by defendant's subsidiary.
On 2 February 1988, defendant notified plaintiff that the Bennett Note was in default, and that the entire debt was accelerated, and demanded payment of the entire amount within five days. After payment was not received as demanded, defendant, through its substitute trustee, instituted foreclosure proceedings, seeking foreclosure of the 25 acre tract secured by the Bennett Note. Defendant obtained an order allowing the foreclosure to proceed.
Plaintiff then commenced a civil action seeking a declaratory judgment declaring the rights, status and relations of the parties concerning the Bennett Note, deed of trust and the release agreement. The court determined, inter alia, that the release agreement did not apply to First Federal's voluntary release of the 6.045 acres from the Bennett Note; that G.S. sec. 45-45.1 did not operate to reduce the indebtedness under the Bennett Note; that defendant First Federal was entitled to a declaratory judgment against plaintiff, and that plaintiff could redeem the property and terminate the foreclosure by paying the entire balance of the principal and other applicable fees; and that the injunction halting foreclosure should be dissolved. The court then entered an order allowing foreclosure to proceed pursuant to G.S. sec. 45-21.16(d). From the judgment and order, plaintiff appeals.
Plaintiff brings forward three questions for this Court's review, all of which are based upon the effect of First Federal's unilateral release of 6.045 acres of real property from the Bennett Note which it had purchased. The first contention is that the release of the property from the note should have resulted in a reduction in plaintiff's indebtedness on the Bennett Note. He next argues that the trial court erred by not applying G.S. sec. 45-45.1 to reduce the amount required to exercise his right of redemption by an amount equal to the value of the property unilaterally released. The third argument is that the trial court erred by allowing foreclosure to proceed, as any default on his part should have been cured or waived by defendant's unilateral release. We rule against plaintiff on all issues.
We note at the outset that the applicable standard of review on appeal where, as here, the trial court sits without a jury is whether competent evidence exists to support its findings of fact and whether the conclusions reached were proper in light of the findings. In re Norris, 65 N.C.App. 269, 310 S.E.2d 25 (1983), cert. denied, 310 N.C. 744, 315 S.E.2d 703 (1984). Therefore, we consider plaintiff's questions with this directive in mind.
The release agreement which was included in the original Bennett Note and was allegedly violated by defendant's unilateral release of property appears, in pertinent part, as follows:

RELEASE AGREEMENT
THIS AGREEMENT, dated July 1, 1983, and made and entered into by and between Harvey D. Bennett, Placid B. Highfill, Mildred B. Blackwood, and Lucille B. Ray, hereinafter referred to as "Sellers", and Philip E. Walker, hereinafter referred to as "Buyer";
WHEREAS, Seller has agreed to sell and Buyer has agreed to buy certain tracts or parcels of land, containing a total of 36.787 acres, more or less, portions of which shall be made subject to a Purchase Money Deed of Trust of even date herewith, securing a Purchase Money Promissory Note of even date herewith in the original principal amount of $308,500.00; ...
....
1. The Purchase Money Deed of Trust shall initially be a lien upon that certain 7.948 acre tract of land designated as Tract D, and that certain 23.839 acre tract of land designated as Tract F, as shown on plat entitled "Property of Harvey D. Bennett," dated June 28, 1983, and revised July 12, 1983, and prepared by Ayers and Edgerton, Surveyors.

*586 2. At request of Buyer, and from time to time, and upon the condition that all accrued interest due under the note has been paid as of the date of the release, Seller shall release portions of said tracts upon the reduction of the then outstanding principal amount of said Note by an amount equal to the amount of principal then owed on the portions to be released, calculated by dividing the then outstanding principal balance by the aggregate acreage then subject to said Deed of Trust, and applied to the acreage of the respective tract(s) to be released. For the purposes of this paragraph, for the first three years of this note and as called for in the note, interest accruing shall be added to principal annually and deemed principal thereafter.
....
5. Any regular installment of principal and interest or any partial prepayment shall be applied first to any outstanding interest then accrued, but not added to principal, and then to reduction of the outstanding principal balance. Any reduction in principal arising or occurring from any regular installment of principal and interest shall be applied to and shall be available for Buyer's next following request release(s) until same be expended as set forth above, without the requirement of additional payment.
6. Buyer shall not be entitled to any release of property unless Buyer is not in default and is in full compliance with all of the terms and provisions of the Note, the Deed of Trust, and this Release Agreement.
....
8. This agreement shall be construed in accordance with the terms and conditions of the Note, and the Deed of Trust referenced above, and shall be binding upon the heirs, successors, personal representatives, or assigns of the parties hereto.
A careful review of this agreement reveals that it contains no provision for the unilateral or voluntary release of property from the note by the seller or his assignee, First Federal. This agreement designates the procedure by which the seller or his assignee is required to release portions of the property at the buyer's request as the buyer reduces the principal by making regular installments. This assessment was confirmed by plaintiff on cross-examination.
Q. ... Paragraph 2 of the, of the agreement which dealt with the release of property upon the the [sic] payment of certain sums was put in to permit certain parcels to be released upon the payment of certain specified sums. Is that right?
A. That's right.
Q. And they, that paragraph dealt with the question of the, under what terms the mortgagee would be required to release terms, to release land under the agreement. Isn't that correct?
A. That's right.
Q. Doesn't deal with the question of, of whether the, the mortgagee would be releasing property unilaterally, does it, doesn't say anything about the mortgagee releasing property unilaterally does it?
A. No, it doesn't.
....
Q. Nor in paragraph 4 is there any provision that deals with the mortgagee releasing property unilaterally does it?
A. No.
Q. All right. Indeed there's nothing in the release agreement, Plaintiff's Exhibit 4, that deals with the question of the grantee releasing property, isn't that correct, with the mortgagor releasing property, if I can correct the question?
A. That's right.
Q. There were no discussions prior to the adoption of the release agreement with regard to the possibility that the mortgagee, that is the Bennetts might unilaterally release property?
A. No.
Q. There were no discussions that anybody to whom they might assign the notes might unilaterally release property. Isn't that right?
A. That's right.
Therefore, according to the clear and unambiguous language of the release agreement, as well as plaintiff's own testimony, we hold that the release agreement does *587 not apply to the unilateral release of property. The trial court correctly concluded, based upon the findings of fact, that the release agreement had no application to the voluntary release and did not reduce plaintiff's indebtedness under the Bennett Note and Deed of Trust. Norris, supra.
Our attention now shifts to the cases and statutes governing this transaction, since plaintiff may not rely upon the release agreement to challenge defendant's unilateral release of the 6.045 acres.
Plaintiff cites G.S. sec. 45-45.1(4) in support of his position that he is entitled to a reduction in his indebtedness on the Bennett Note because of the unilateral release. It provides that
[w]henever real property which is encumbered by a mortgage or deed of trust is sold expressly subject to the mortgage or deed of trust, but the grantee does not assume the same, and thereafter the mortgagee or secured creditor under the deed of trust, or trustee acting in his behalf, releases any of the real property included in the mortgage or deed of trust, the mortgagor or grantor of the deed of trust is released to the extent of the value of the property released, which shall be the value at the time of the release or at the time an action is commenced on the obligation secured by the mortgage or deed of trust, whichever value is the greater.
The trial court concluded that the statute did not operate to reduce Walker's indebtedness under the Bennett Note; that Walker had no right of redemption as mortgagor; that G.S. sec. 45-45.1 does not apply in this situation because Walker was a junior mortgagee or lienholder of a note on the 6.045 acre tract and had no indebtedness to reduce; and finally that plaintiff's only right of redemption was as subsequent owner of the 25.75 acre tract, due to a transfer of the property from MDG to Walker effected long after First Federal's unilateral release of the 6.045 acres from the Bennett Note.
We find that these conclusions were proper in light of the trial court's findings which had ample support from the evidence. Norris, supra. Paragraph (4) of G.S. sec. 45-45.1 contemplates a sale or transfer of encumbered property to a grantee who does not assume the mortgage, and a release of the secured property by the mortgagee along with an attempt to hold the mortgagor personally liable on the note. See Barnaby v. Boardman, 313 N.C. 565, 330 S.E.2d 600 (1985); Wachovia Realty Investments v. Housing, Inc., 292 N.C. 93, 232 S.E.2d 667 (1977); Smith, Survey of North Carolina Case Law, Credit Transactions, 44 N.C.L. Rev. 956 (1965-66).
The statute has no application to the transaction in the case at bar where MDG, the mortgagor, transferred encumbered property (11.045 acres) to the grantee (First Federal's subsidiary), and the mortgagee (First Federal) released the 6.045 acres of the tract which were encumbered from the note. The grantee and the mortgagee were subsidiary and parent corporation, respectively. By virtue of the initial transfer by MDG, plaintiff Walker lost any and all interest in the property at the heart of the dispute. He owned no equity of redemption in the property and neither did MDG which transferred the property to First Federal's subsidiary to satisfy a debt owed to First Federal. If any party suffered an impairment of rights by the release, the party was First Federal, the holder of the Bennett Note which originally encumbered 31.79 acres of the tract before its unilateral release of 6.045 acres.
Therefore, because G.S. sec. 45-45.1 is inapplicable to the facts of this case, and plaintiff's authority from other jurisdictions is unpersuasive on the arguments set forth, we hold that the trial court committed no error by refusing to reduce plaintiff's indebtedness under the Bennett Note encumbering the remaining 25.75 acres, and by refusing to conclude that plaintiff's default on the Bennett Note was cured by defendant's unilateral release of property.
Affirmed.
WELLS and BECTON, JJ., concur.