An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-732

NORTH CAROLINA COURT OF APPEALS

Filed 7 January 2014

IN THE MATTER OF:

                                      Guilford County

                                      Nos. 10 JT 328-29

L.M.C. and C.L.C.

Appeal by respondent from order entered 5 April 2013 by Judge Sherry Alloway in Guilford County District Court. Heard in the Court of Appeals 10 December 2013.

> *Mercedes O. Chut for Petitioner Guilford County Department of Social Services.*

> *Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, for guardian ad litem.*

> *Hunt Law Group, P.C., by James A. Hunt, for respondent.*

DILLON, Judge.

Respondent, the mother of the juveniles L.M.C. and C.L.C., appeals from an order terminating her parental rights. After careful review, we affirm.

I. Factual & Procedural Background

On 25 May 2010, the Guilford County Department of Social Services ("DSS") filed a petition alleging that L.M.C. and C.L.C. were abused, neglected and dependent juveniles. DSS stated that it received a report on 29 April 2010 concerning suspected sexual abuse of one of the juveniles. A neighbor who cared for the juveniles indicated that one of the children told her that respondent's boyfriend "made her touch his pee pee"; that the child's bottom "looked very red and irritated"; and that the child told her that her mom said not to tell anybody what was occurring in the home.

A social worker met with respondent and her family on 29 April 2010 to discuss the allegations. Respondent denied having any knowledge of any inappropriate behavior between her boyfriend and her daughter. L.M.C. denied that respondent's boyfriend had ever touched her, but disclosed that C.L.C. had told respondent that respondent's boyfriend had touched her vagina. The social worker later spoke with C.L.C. at school, and C.L.C. disclosed that respondent's boyfriend had touched her vagina and made her touch his penis. C.L.C. further stated that respondent's boyfriend had asked her to watch a "naked movie" with him and then asked her to do the things depicted in the movie, and she complied. C.L.C. also told the social worker

that she had told her mom about the abuse. The social worker informed respondent that her boyfriend would have to leave her home; after some initial hesitancy, respondent agreed.

A forensic interview with C.L.C. was conducted on 24 May 2010. During the interview, C.L.C. disclosed that both her father and respondent's boyfriend had touched her vagina. She further stated that she had told respondent about the boyfriend's abuse, but that respondent had asked that she not tell anyone because she wanted her boyfriend to come home.

Respondent admitted to the police that C.L.C. had informed her of the abuse. Respondent stated that she had confronted her boyfriend about the abuse, and he had admitted to being intoxicated, but denied that any penetration had occurred. Respondent continued to allow her boyfriend to live in her home after the disclosure of abuse. Police advised DSS that criminal charges had been filed against respondent for aiding and abetting felony child abuse. DSS responded by taking non-secure custody of the juveniles.

On 9 July 2010, C.L.C. was adjudicated an abused, neglected and dependent juvenile, and L.M.C. was adjudicated a neglected and dependent juvenile. The trial court entered an amended

dispositional order on 9 November 2010, ordering a concurrent plan of reunification and adoption for the juveniles.

On 16 March 2012, a permanency planning review hearing was held in district court. The court found as fact that, on 5 March 2012, DSS received information that respondent had been arrested for driving while impaired, driving while license revoked, and driving without insurance, tags, or registration. DSS was advised that the mother was in jail and being held under a $1,200.00 bond.

The following day, a social worker contacted respondent and asked whether she planned to attend her visitation that day and whether she had "anything new to report." Respondent responded that she was planning to attend visitation and that she had nothing new to report. The social worker then informed respondent that she was aware of her arrest. Respondent began to cry and admitted she had "no one to blame but herself."

On 10 April 2012, the trial court changed the permanent plan for the juveniles to adoption "based on the mother's recent poor judgment, lack of consistent progress on her case plan, and the amount of time the juveniles have been in care[.]" On 16 May 2012, DSS filed a petition to terminate respondent's parental rights. On 5 April 2013, the trial court entered an

order terminating respondent's parental rights with respect to L.M.C. and C.L.C. upon concluding that grounds for termination existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2). From this order, respondent appeals.

## II. Analysis

### A. Termination Based on Neglect

Respondent first argues that the trial court erred by concluding that grounds existed to terminate her parental rights. We disagree.

N.C. Gen. Stat. § 7B-1111(a) (2011) sets out the statutory grounds for termination of parental rights. A finding that any one of the enumerated grounds have been met is sufficient to support termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." *In re D.J.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005).

In the instant case, the trial court concluded that grounds existed to terminate respondent's parental rights based on neglect. *See* N.C. Gen. Stat. § 7B-1111(a)(1) (2011). Our General Statutes define a "neglected juvenile" as

> [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2011). Generally "[a] finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). However, where, as here, a child has been removed from the parent's custody before the termination hearing and the petitioner presents evidence of prior neglect, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). Additionally, the determination of whether a child is neglected "must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." *In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).

The juveniles in this case came into the care of DSS after respondent's boyfriend sexually abused C.L.C. The trial court found as fact that the juveniles were adjudicated neglected on 9 June 2010. The trial court also found the following facts at the termination hearing:

> 10. During the forensic interviews of the minor children on May 24, 2010, it was learned that [respondent] had some knowledge of the sexual abuse of the minor child prior to DSS becoming involved with the family.
>
> 11. [Respondent] has held at least eight jobs throughout the life of the case but has not maintained any job longer than six months.
>
> . . . .
>
> 13. [Respondent] began working with a man by the name of Felix in March, 2012, for the Turkish Grill. This employment involved [respondent] traveling with a group of men and staying overnight at a motel with the men.
>
> . . . .
>
> 15. At a visit in December, 2011, with the minor child[, respondent] brought a man and asked [C.L.C.] to sing for the man. The social worker advised [respondent that] this was not appropriate given the sexual abuse endured by the minor child.
>
> 16. [Respondent] was convicted of DWI in 2004, 2008 and 2012.
>
> 17. [Respondent] had one positive drug screen for marijuana on August 12, 2012.

18. In August 2012, [respondent] attempted to obtain the address of the foster home where the minor children were residing through the minor child [C.L.C.]. [Respondent] asked [C.L.C.] not to tell the foster mother.

19. [Respondent] has complied at various times with components of her case plan but is still not at the point where unsupervised visitation with the minor children is recommended.

20. There are concerns about [respondent's] honesty and some recent incidents which point to her lack of integrity and inability to be truly open, honest and transparent.

21. [Respondent] continues to [exhibit] questionable judgment in her decision making.

    a. [respondent's] job with the Turkish Grill where she stayed overnight in a hotel with 3 to 4 men.

    b. An incident where she wanted her daughter, [C.L.C.], to sing to a male friend that [respondent] had brought to a visit at DSS and [respondent's] inability to understand the inappropriateness of that given the circumstances that led to the children's removal from the home.

    c. [Respondent] was in therapy with a male therapist for a year and then states that she could not talk to a male therapist about her own issues and her failure to inform DSS about that issue.

　　　　d. [Respondent's] dishonesty about having a dog in her home and her recent Driving While Impaired charge.

　　　　22. [Respondent] has not been able to address in therapy the issues that led to the children's removal because in order to address those issues in therapy [respondent] must first address her own sexual abuse and at this time [respondent] has not addressed her own issues.

　　　　23. The therapist for the children is still concerned about the children's safety in that she does not believe the minor child [C.L.C.], at this time is not willing to report to [respondent] if anything happened to her.

Based on these findings, the trial court concluded that "there is a reasonable possibility that [the juveniles would continue to be neglected] for the foreseeable future."

Respondent does not argue that the trial court's findings of fact are without evidentiary support. Instead, respondent argues that the trial court should have drawn different conclusions from the evidence as a whole. However, it is the trial "judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). Accordingly, we are bound by the

trial court's findings of fact. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

Based on its unchallenged findings, the trial court made an ultimate finding that respondent had neglected the juveniles and that there was a "reasonable probability that such neglect [would] continue for the foreseeable future." Consequently, we conclude the trial court's findings of fact support its conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to terminate respondent's parental rights.

B. Termination Based on Wilful Failure To Make Progress

Respondent additionally argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate her parental rights. However, because we conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to support the trial court's order, we need not address the remaining ground found by the trial court to support termination. *Taylor*, 97 N.C. App. at 64, 387 S.E.2d at 233-34.

C. Determination on Best Interest of the Child

In respondent's final argument, she contends that the trial court abused its discretion when it concluded that termination of her parental rights was in the best interests of the

juveniles. Once statutory grounds for termination have been established, the trial court is required to "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2011). When determining whether it is in the juvenile's best interests to terminate the parent's rights, the trial court is required to make written findings regarding the relevant factors enunciated in N.C. Gen. Stat. § 7B-1110(a). *Id.* "We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).

Here, in its dispositional findings, the trial court noted the ages of the juveniles and the following facts relating to the factors stated in N.C. Gen. Stat. § 7B-1110(a):

> c. There is a strong likelihood of adoption. Both children are reasonably well behaved. The minor children are attractive children and have done well in both the foster home and in school.
>
> d. The minor children are not currently placed in an adoptive home, but they were able to bond with the foster parents and feel safe in their home which indicates that they would bond with an adoptive home.
>
> e. The minor children have an extremely strong bond with [respondent]. The minor children love [respondent]. However, [C.L.C.] seems to be parentified [sic] in

that she worries about the [respondent's] welfare.

f. The permanent plan for the juveniles is adoption and terminating [respondent's] parental rights is necessary in order for the juveniles to be adopted.

g. Other relevant considerations are that there is no other family available for placement or adoption. Further, the time period the children have been in DSS custody is a relevant consideration.

Respondent cites the strong bond she shares with the juveniles and argues that the trial court erred in determining that termination was in the best interests of the juveniles because "the children are not, and have never been, in a potential adoptive placement." Furthermore, respondent notes that the father of the juvenile, who is not a party to this appeal, has not yet had his rights terminated, and thus it was unlikely that termination of her parental rights would move the children closer to permanence. We are not persuaded.

The fact that the father's parental rights have not been terminated is irrelevant. As noted by the trial court, the permanent plan for the juveniles is adoption. If we were to accept respondent's argument, the father's parental rights also could not be terminated, since respondent's parental rights would remain intact. Furthermore, the trial court is not

required to find that a child is adoptable before terminating a parent's parental rights.  *See In re Norris*, 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983), *cert. denied*, 310 N.C. 744, 315 S.E.2d 703 (1984).  Therefore, based on the court's dispositional findings of fact, we conclude that the trial court's determination that it was in the juveniles' best interests to terminate respondent's parental rights was not manifestly unsupported by reason.

AFFIRMED.

Judges McGEE and McCULLOUGH concur.

Report per Rule 30(e).