McGEE, Chief Judge.
Respondent-Mother ("Respondent") appeals from an order terminating her parental rights to her minor children, D.A.J. and D.K.J. (collectively "the children"). We affirm the trial court's order.
Petitioner Wake County Human Services ("WCHS") became involved with Respondent and her children when it received a report on 16 June 2012, alleging the children were subjected to emotional abuse, improper care, improper discipline, and improper supervision. Respondent arranged for the children to be placed with relatives in July 2012, and Respondent was admitted to Holly Hill Hospital on 4 August 2012 for unidentified reasons. Upon Respondent's discharge from Holly Hill Hospital, she moved to the Helen Wright Center in Raleigh, North Carolina, where she remained until mid-December 2012. Respondent did not inform WCHS of her whereabouts, and WCHS obtained non-secure custody of the children and filed petitions alleging the children were neglected and dependent.
After a hearing on 19 March 2013, at which Respondent was not present, the trial court entered adjudication and disposition orders in which it concluded the children were neglected juveniles. The trial court continued custody of the children with WCHS, and directed WCHS to "make reasonable efforts to eliminate the need for placement of the children outside the home." The trial court also directed Respondent to enter into, and comply with, an Out of Home Family Services Agreement ("the agreement") with WCHS. The agreement included the following instructions: (1) complete a mental health assessment and follow all recommendations; (2) complete a substance abuse evaluation and random drug screenings and follow all recommendations; (3) take any prescribed medications as directed; (4) complete a parenting class and demonstrate learned skills during her interactions with the children and in her life choices; (5) participate in the educational, mental health, and juvenile probation needs of her children as appropriate; (6) obtain and maintain stable housing for herself and the children; (7) comply with a visitation agreement; and (8) maintain regular contact with WCHS.
The trial court held a three-month review hearing on 28 May 2013, at which Respondent appeared. In its order from the review hearing, the trial court found that Respondent had entered into the agreement, had completed the intake process for an outpatient addiction treatment program, and had indicated that she would be completing a mental health evaluation through that program. However, Respondent had not stayed in touch with WCHS social workers, had not shown up at UNC Hospital where D.K.J. was undergoing a heart catheterization, and had failed to demonstrate an understanding of how her alcohol abuse and failure to manage her diabetes affected the children. The trial court continued custody of the children with WCHS, directed WCHS to continue to make reasonable efforts to reunify the children with their parents, and ordered Respondent to comply with the agreement.
The trial court conducted a placement review and permanency planning hearing on 18 November 2013, at which Respondent was present. The trial court found that the children's current placements were appropriate, but that further reunification efforts with Respondent would be "futile or inconsistent" with the children's safety because Respondent had failed to comply with most of the terms of the agreement. The trial court released WCHS from making further efforts to reunify the children with Respondent and set the permanent plan for the children as adoption.
WCHS filed a petition to terminate Respondent's parental rights to the children on 7 May 2014. WCHS alleged grounds existed to terminate Respondent's parental rights based on neglect, failure to make reasonable progress to correct the conditions that led to the children's removal, and failure to pay a reasonable portion of the cost of care for the children while they were in WCHS custody. After a hearing on 22 September 2014, at which Respondent did not appear, the trial court entered an order terminating her parental rights to the children.[1] The trial court concluded that grounds existed to terminate Respondent's parental rights based on neglect and failure to make reasonable progress to correct the conditions that led to the children's removal, and that it was in the children's best interests to terminate Respondent's parental rights. Respondent filed timely notice of appeal from the court's order.
Respondent first contends the trial court abused its discretion by failing to inquire into whether she should have been appointed a guardian ad litem. We disagree.
"On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent who is incompetentin accordance with G.S. 1A-1, Rule 17." N.C. Gen.Stat. § 7B-1101.1(c) (2013) (emphasis added); see also2013 N.C. Sess. Laws 305, 324, ch. 129, § 32 (modifying N.C. Gen.Stat. § 7B-1101.1(c), which formerly provided that a trial court "may appoint a guardian ad litem for a parent ... if the court determines that there is a reasonable basis to believe that the parent is incompetentor has diminished capacity and cannot adequately act in his or her own interest" (emphasis added)). An incompetent adult "lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition." N.C. Gen.Stat. § 35A-1101(7) (2013). "A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention[ ] which raise a substantial question as to whether the litigant is non compos mentis." In re J.A.A.,175 N.C.App. 66, 72, 623 S.E.2d 45, 49 (2005). "Whether to conduct such an inquiry is in the sound discretion of the trial judge." In re A.R.D.,204 N.C.App. 500, 504, 694 S.E .2d 508, 511, aff'd per curiam,364 N.C. 596, 704 S.E.2d 510 (2010). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision."White v. White,312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
No participant in the present case raised a concern that Respondent might not be competent during the proceedings below. Respondent's trial counsel, the children's GALs, several WCHS social workers, trial counsel for the children, trial counsel for WCHS, and two district court judges, all personally observed and interacted with Respondent; yet the record is silent as to any concerns regarding Respondent's competency. Moreover, the record before us lacks any significant evidence regarding the overall impact of Respondent's mental health issues on her competency.
Although Respondent's appellate counsel asserts that "[t]here [wa]s no telling what schizophrenic reality [Respondent] was in" and that Respondent was "lost in the world of her multipl[e] crippling deficits," the only support in the record for such a suggestion are two statements: one from a 28 May 2013 WCHS report, wherein it was recommended that Respondent be "evaluate[d] for schizoaffective disorder [;]" and one from a 19 March 2013 court adjudication/disposition report indicating that Respondent's mental health report stated that "she hear[d] voices, was molested, took entire insulin to overdose and immediately called ambulance as well as a teen she took an entire bottle of painkillers." However, these reports lack temporal or substantive context and do not suggest Respondent lacked competency at any point during the underlying proceedings. Rather, the transcript included in the record provides that Respondent's mental health assessment indicated that she had been diagnosed with a depressive disorder and had "numerous hospitalizations since she was 12 for suicidal ideation," and the record is devoid of any findings or results from Respondent's mental health or substance abuse assessments. Counsel's suggestion that Respondent's incompetence is indicated by her past difficulties in managing her diabetes, her lack of permanent housing, her inability to hold a job, and her failure to contact or visit the children lacks any evidentiary support and rests entirely upon counsel's unfounded suppositions. Nonetheless, because the record does not reflect that "circumstances [we]re brought to the judge's attention[ ] which raise[d] a substantial question as to whether [Respondent was] non compos mentis," see In re J.A.A.,175 N.C.App. at 72, 623 S.E.2d at 49, we conclude that the trial court did not abuse its discretion when it did not, sua sponte,inquire into Respondent's competency before holding the hearing to terminate her parental rights to the children.
Respondent also argues the trial court abused its discretion when it concluded that terminating her parental rights to the children was in their best interests because there was "no basis in the evidence" to support the trial court's conclusion that the children "are adoptable."
"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen.Stat. § 7B-1110(a) (2013). In making its determination, the trial court "shall consider" and "make written findings" regarding the following criteria, when relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
Id."We review the trial court's decision to terminate parental rights for abuse of discretion." In re Anderson, 151 N.C.App. 94, 98, 564 S.E.2d 599, 602 (2002).
In support of its conclusion that termination of Respondent's parental rights was in the best interests of the children, the trial court made the following findings of fact:
21. The children have made it clear that they have no desire to reunify with their mother.
....
25. That the conduct of [the] parents has been such as to demonstrate that they will not promote the healthy and orderly, physical and emotional well being of the children.
26. That the parents' lack of compliance with the Court's orders and [the agreement] demonstrate that there is a reasonable probability of a repetition of abuse and neglect if the children were to be returned to the care of either parent.
27. That the minor children are in need of a permanent plan of care at the earliest possible age which can be obtained only by the severing of the relationship between the children and their parents by termination of the parental rights of the parents.
28. That the children are adoptable although [D.A.J.] has some special needs. [D.A.J.] is not yet placed in an adoptive home. [D.K.J.] resides in a relative placement where it is likely that she will be adopted.
29. That the children do have a bond with [Respondent] but [Respondent] does not return their love and affection. The bond is not an appropriate parent/child bond and the relationship between [Respondent] and the children is not a healthy one.
....
31. The children do have a bond with their paternal grandmother with whom [D.K.J.] resides.
Respondent challenges the trial court's finding that D.K.J. is likely to be adopted by her paternal grandmother. While we agree with Respondent that this finding is not supported by evidence at the hearing, this error alone is not sufficient to establish that the trial court abused its discretion in terminating her parental rights. See In re T.M.,180 N.C.App. 539, 547, 638 S.E.2d 236, 240 (2006) ("When ... ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error."). Moreover, although Respondent urges that the children are "nigh-on to unadoptable," noting that the social worker testified that the children's behavioral issues and their ages will make their adoption "challenging," Respondent overlooks the social worker's testimony that she ultimately thought the children were "pretty fabulous young ladies" and were adoptable despite their behavioral issues. Respondent similarly ignores the testimony from the children's GAL that both children were adoptable.
The trial court's findings of fact show that it carefully considered all of the statutory factors in determining whether terminating Respondent's parental rights as to the children was in their best interests, and that it did not solely base its determination on the inaccurate finding that D.K.J. was likely to be adopted by her paternal grandmother. Moreover, we have held that "the absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights." See In re D.H.,--- N.C.App. ----, ----, 753 S.E.2d 732, 736, (2014) (citing In re Norris,65 N.C.App. 269, 275, 310 S.E.2d 25, 29 (1983) ("It suffices to say that such a finding [of adoptability] is not required in order to terminate parental rights."), cert. denied,310 N.C. 744, 315 S.E.2d 703 (1984) ). Accordingly, we hold that the trial court's conclusion that termination of Respondent's parental rights was in the children's best interest does not constitute an abuse of discretion, and we affirm the trial court's order.
AFFIRMED.
Judges CALABRIA and HUNTER, JR. concur.
Report per Rule 30(e).
Opinion
Appeal by Respondent-Mother from order entered 21 October 2014 by Judge Keith O. Gregory in District Court, Wake County. Heard in the Court of Appeals 29 June 2015.

The trial court's order also terminated the parental rights of the children's fathers; however, the fathers are not parties to this appeal.