SUE B. LEAK, Plaintiff-Appellee v. GRADY D. LEAK, Defendant-Appellant

No. COA97-636

(Filed 7 April 1998)

**1. Divorce and Separation § 448 (NCI4th)— child support— termination—eighteen year old—not a high school graduate—motion required**

The trial court correctly determined that defendant-father had an affirmative duty under N.C.G.S. § 50-13.4(c) to move the court for termination of his child support obligations prior to unilaterally terminating payments on grounds that his eighteen-year-old child was either no longer attending school or was failing to make satisfactory progress toward graduation. N.C.G.S. § 50-13.4(c) permits a payor to unilaterally terminate his child support payments to a child who has reached age 18 only when the child graduates from high school or attains the age of 20.

LEAK v. LEAK

[129 N.C. App. 142 (1998)]

2. **Divorce and Separation § 448 (NCI4th)— child support—eighteen year old—attending high school—support continued**

The trial court did not abuse its discretion by ordering defendant to continue his child support obligations under N.C.G.S. § 50-13.4(c)(2) for an eighteen-year-old son where there was sufficient evidence to support the conclusions that the son was attending high school, although habitually absent and late, and that he made satisfactory academic progress toward graduation given his rigorous course and work schedule. The trial court properly determined that it was in the best interest of the son that his father continue to support him.

3. **Divorce and Separation § 397 (NCI4th)— child support—child's needs—actual past expenses**

There was no error in a child support proceeding in the trial court's finding that plaintiff had expenses of $955 per month for the son. The court referred in the finding to the actual past expenses the mother incurred to meet the reasonable needs of her son, not herself, and the amount assessed by the court was the total amount of expenses reasonably necessary to support the son.

4. **Divorce and Separation § 400 (NCI4th)— child support—mother's income—conflicting testimony**

The trial court did not abuse its discretion in a child support proceeding by concluding that the mother had no viable income from her beauty salon business. Given the conflicting testimony in this case and the general rule that the trial court determines the credibility of witnesses and the weight of their testimony when the court sits as the trier of fact, deference must be paid to the trial court's determination of the more credible testimony.

5. **Divorce and Separation § 554 (NCI4th)— child support—attorney fees—eighteen year old attending high school**

The trial court did not err by awarding attorney's fees to the mother in a child support action where the mother sought continued and increased support of the son until he graduated from high school or reached age 20. In promulgating N.C.G.S. § 50-13.4(c), the legislature intended to provide a means by which children could continue to receive support from their parents or guardians even though they were no longer minors; it cannot be

concluded that the legislature intended to exclude those seeking support under that statute from the possibility of obtaining attorney fees under N.C.G.S. § 50-13.6.

6. **Evidence and Witnesses § 887 (NCI4th)— hearsay—corroboration—doctor's unsworn letter and report—parent's diabetes—child support action**

The trial court did not err in a child support action by accepting as evidence an unsworn letter and report from plaintiff's physician which tended to show that she suffered from diabetes mellitus and was incapable of working. The documents were offered and accepted for the limited purpose of corroborating the mother's testimony that she believed she had diabetes mellitus and could not work. The challenged documents were not part of the proof of the trial court's finding that the mother suffered from an uncontrolled diabetic condition.

Appeal by defendant from order entered 3 February 1997 by Judge Elaine M. O' Neal in Durham County District Court. Heard in the Court of Appeals 27 January 1998.

*Henry A. Mitchell, III, attorney for defendant-appellant.*

*Irene Norton Need, attorney for plaintiff-appellee.*

WYNN, Judge.

N.C. Gen. Stat. § 50-13.4(c) permits a supporting parent to unilaterally terminate child support payments to a child who has graduated from high school or attained the age of 20. Because the 18 year old child in this case had not graduated from high school, we uphold the trial court's determination that the father improperly terminated his support payments without court approval. Further, we hold that the trial court properly ordered the father to pay increased support for his son and the mother's attorney's fees.

The father in this case—an adjudged incompetent person acting though his legal guardian—unilaterally terminated child support payments shortly after his son's eighteen birthday in March of 1996. He contended that his obligation to pay child support terminated automatically because his son neither attended high school on a regular basis nor made satisfactory progress towards graduation from high school.

In response, the mother petitioned the trial court for continued payments and arrears, as well as an increase in the amount of the father's support obligation. The mother submitted with her petition a Financial Affidavit listing expenses for both herself and son and explaining that increased child support was warranted by a change of circumstances arising from her having diabetes mellitus. This condition, she asserted, reduced her income to only $200.00 per month because she was forced to take a medical leave of absence from work.

Following a hearing, District Court Judge Elaine O'Neal concluded as a matter of law that the son was regularly attending school and making satisfactory progress towards graduation. Accordingly, she ordered the father to continue paying support to his son. The court also increased his support payments from $211.36 per month to $396 per month, with payment of arrears accruing from July of 1996. Finally, Judge O'Neal ordered the father to pay the mother's attorney fees in the amount of $959.00. The father appealed to this Court.

## I.

[1] The father first argues that the trial court erred in holding that he had an affirmative duty under N.C. Gen. Stat. § 50-13.4(c) to bring a motion before the court prior to terminating his support payments to his 18 year-old son.

N.C.G.S. § 50-13.4(c) provides that court ordered child support payments terminate when the child reaches the age of 18 except:

> (1) If the child is otherwise emancipated, . . . (2) If the child is still in primary or secondary school when the child reaches age 18, support payments shall continue until the child graduates, otherwise ceases to attend school on a regular basis, fails to make satisfactory academic progress towards graduation, or reaches age 20, whichever comes first, unless the court in its discretion orders that payments cease at age 18 or prior to high school graduation.

N.C.G.S. § 50-13.4(c) (1993).

The father in this case unilaterally terminated his support payments to his son because he believed that the son was not attending classes on a regular basis and was not making satisfactory progress towards his graduation. According to the father, our legislature authorized him to take such action as a payor of child support when it declared at the outset of N.C.G.S. § 50-13.4(c) that "[p]ayments

ordered for the support of a child shall terminate at the age of 18." This mandatory language, the father argues, when read in light of the remainder of the statute, permits a payor to unilaterally terminate child support obligations when the child, who is not otherwise emancipated but is still in high school at age 18, ceases to attend school on a regular basis or fails to make satisfactory progress towards graduation.

According to the trial court, however, the statute contemplates unilateral termination of support payments for a child still in high school at age 18 only if that child has graduated from high school or attained the age of 20 when the support payments are terminated. We agree with the trial court. N.C.G.S. § 50-13.4(c), provides in a concluding paragraph that:

> In the case of graduation, or attaining age 20, payments shall terminate without order by the court, subject to the right of the party receiving support to show, upon motion and with notice to the opposing party, that the child has not graduated or attained the age of 20.

Thus, N.C.G.S. § 50-13.4(c) permits a payor to unilaterally terminate his child supports payments to a child who has reached age 18 only upon the occurrence of one of the events provided for in that concluding paragraph—i.e., when the child graduates from high school, or when the child attains the age of 20. This reading represents the more common sense interpretation of the statute. In fact, to allow a parent to unilaterally determine whether a child is regularly attending school, or is making satisfactory progress towards graduation would undermine the purpose of this statute, which is to provide continuing child support for children in school. Clearly, any parent desiring to terminate child support for an under 20 year old unemancipated child still in school, need only satisfy the court by motion that the child is not making satisfactory progress towards graduation. Accordingly, we hold that the trial court correctly determined that under N.C.G.S. § 50.13.4(c), the father in this case had an affirmative duty to move the court for termination of his child support obligations on grounds that his child was either no longer attending school or was failing to make satisfactory progress towards graduation.

## II.

**[2]** Next, the father argues that the trial court abused its discretion in ordering him, under N.C.G.S. § 50-13.4(c)(2), to continue his support

obligations because the trial court's findings of fact and conclusions of law concerning his son's school attendance and his academic progression were not supported by the evidence. We disagree.

Findings of fact and conclusions of law made by a trial court in a non-jury trial are, like a jury verdict, binding on appeal if there is evidence to support them. *Henderson County v. Osteen*, 297 N.C. 113, 120, 254 S.E.2d 160, 165 (1979). This rule holds true even if there is evidence in the record which might have supported findings to the contrary. *Id.*

Based upon the evidence presented by both parties in this case, the trial court made the following findings of fact regarding the son's school attendance and academic progression:

9. [The son] is currently in the 11th grade which he is taking for the second time.

10. According to the testimony of his guidance counselor, he did not pass five of his six courses in the past term. He made a passing grade in one course, but he will receive no credit for that course because of absences.

11. His grades reflect that he did some work and learned something. They reflect some effort in light of the other circumstances of his life and can not be evaluated isolated from the conditions at home where the basic necessities of life are at risk.

16. The guidance counselor has been in contact with the plaintiff. She stated that [the son] had taken a rigorous schedule, which she could not recommend. He desires to do well in school, but he experiences difficulties and has not been able to achieve. She believes that he belongs in some type of academic setting, perhaps different from the one he has been in the past term.

18. [The son] had a significant number of absences this past term. There is no evidence of the reasons for the absences, but there is evidence that at the beginning of the year he had only one pair of trousers for school.

24. Evidence of difficulties with school work in previous years was heard, but were not persuasive regarding the matter before the Court.

In light of these findings of fact, the trial court then concluded as a matter of law that the son had "made satisfactory academic progress

**LEAK v. LEAK**

[129 N.C. App. 142 (1998)]

in secondary school based on the totality of the circumstances at the time, which included his rigorous academic schedule, trying to work, almost no family income, [and] the illness of his mother." The trial court also concluded that "it [was] in the best interest of [the son] that he stay in school and get an education, and [that] it [was therefore] appropriate that the defendant, through his guardian help him do so."

Upon our review of the record in this case, we conclude that the aforementioned findings of fact were supported by the evidence. First, the record discloses that although there was evidence that the son was habitually absent at his high school, there was also evidence before the trial court which tended to describe his high school as having a somewhat stringent or technical policy regarding student absences and tardies.

Second, the record also discloses that there was substantial evidence before the trial court which tended to show that the son's home life was not conducive to him having a successful academic career in school. Both the son and his mother testified that because of his mother's illness, the family often lacked the food, clothing, and transportation needed to make it through a given day. As a result of these circumstances, the son testified that he was forced to go to work and that because of his work schedule, he sometimes had to miss school.

Significantly, the son's school guidance counselor described the son as a young man eager to do well, but unable to achieve academic success because of his family problems. She also testified that she believed the son was taking an overly ambitious course schedule because he was eager to complete high school as soon as possible. Further, when asked whether she believed the son's academic record showed satisfactory academic success, the guidance counselor testified that:

It shows me that he's been in school. He's acquired some knowledge. It may not be knowledge enough for him to have passed a course, but those days he's been there—if you're in a class, you're going to learn something. I find it difficult to believe that a child could sit in a class and not hear something and it go in.

Given this testimony, as well as that of the son and his mother, we believe there was sufficient evidence in the record to support the trial court's conclusion that the son, although habitually absent and late for school, was indeed attending high school. Moreover, we also

believe the evidence was sufficient to support the trial court's conclusion that while in school, the son made satisfactory academic progress towards his graduation given both his rigorous course and work schedule. Accordingly, we hold that the trial court properly determined that it was in the best interest of the son that his father continue to support him.

## III.

[3] By his third assignment of error, the father argues that the finding of fact Number 14 did not sufficiently support the trial court's conclusion that his child support obligation be increased from $211.34 a month to $396.00 a month.

In finding of Fact No. 14, the trial court found that "[p]laintiff ha[d] expenses of $955.00 per month for [the son]." The father contends that this finding is on its face insufficient to support an increase in child support because, he argues, "[t]his court has required findings and evidence of actual past expense for the reasonable needs of the <u>child</u>, not [the mother]." We find this argument unpersuasive.

First, in making this finding of fact, the trial court was referring to the actual past expenses the mother incurred to meet the reasonable needs of her son, not herself. Furthermore, our review of the record reveals that the financial affidavit of the mother categorized the individual expenses of the son and then totaled those expenses at $955.00. Thus, the $955.00 assessed by the court was indeed the total amount of expenses reasonably necessary to support the son. We, therefore, reject the father's challenge of the trial court's finding of fact number 14.

[4] The father further argues that the trial court improperly disregarded evidence concerning the mother's income. Regarding the mother's income, the trial court determined:

> There was testimony of possible income from a beauty salon in the ground floor of her home in the amount of $215.00 per month. If this is believed, plaintiff may have income of $415.00 per month.

Apparently, however, the trial court did not believe that the mother generated income for her beauty salon business as it later found as a fact that

> Without child support, [the son] was in a Catch 22 situation. As a matter of survival, he had to help his mother, <u>who was not work-</u>

ing, maintain the household as well as attempt to finish his high school education as quickly as possible (emphasis added).

According to the father, this finding was "clear error in light of the *uncontroverted* evidence from [his son] that [his mother] did work and derive income from her work." (emphasis added). We disagree. Indeed, the record reveals that the evidence before the trial court regarding the mother's income was far from uncontroverted. Although the son testified that his mother received some income from her beauty salon business, the record also shows that the mother testified that she did not receive income from her business. Given this conflicting testimony, and the general rule that a trial court, when sitting as trier of fact, determines the credibility of witnesses which comes before it and the weight to be given to their testimony, we must pay deference to what the trial court determined was the more credible testimony of the mother regarding her financial status. *See General Specialities Co., Inc. v. Nello L. Teer Co.*, 41 N.C. App. 273, 254 S.E.2d 658 (1979) (stating that a trial judge, who sits as trier of fact, has a duty to pass on the credibility of witnesses and to decide the weight to be given the testimony and the reasonable inferences to be drawn therefrom, and that an appellate court cannot substitute itself for trial in such a task). Accordingly, we hold that the trial court did not abuse its discretion in concluding that the mother had no viable income from her beauty salon business.

## IV.

[5] By his fourth assignment of error, the father argues that the trial court's order awarding attorney's fees to the mother violated N.C. Gen. Stat. § 50-13.6, which provides in pertinent part:

In an action or proceeding for the custody or support, or both, of a minor child, including a motion for in the cause for modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding . . .

N.C.G.S. § 50-13.6 (1995).

LEAK v. LEAK

[129 N.C. App. 142 (1998)]

Thus, in order to award attorney's fees under N.C.G.S. § 50-13.6, the action involved must be one for the custody or support of a minor child and the trial court must find as a fact that: (1) the interested party acted in good faith; (2) he or she had insufficient means to defray the expenses of the action; and (3) the supporting party refused to provide adequate support under the circumstances existing at the time the action or proceeding commenced.

Here, the father contends that this case does not qualify for an award of attorney's fees because: (1) this case does not involve the custody or support of a minor child; (2) there was insufficient evidence to support the trial court's finding that the mother acted in good faith; and (3) the trial court's order was silent as to whether the father refused to pay adequate support at the time of this action's commencement.

In asserting his first argument against the court's award of attorney's fees, the father makes much of the fact that the relief the mother sought in initiating this action in September of 1996 was for the continued and increased support of the son up until he graduated from high school or reached the age of 20. Given this particular request for relief, and the fact that the son turned 18 on 10 March 1996, the father argues that the mother's action for modification of support "did not 'reach back' to any point in time where [the son] was a minor."

In our opinion, the father's argument completely belies the purpose of N.C.G.S. § 50-13.4(c). As is evident from the text of the statute itself, the provisions of N.C.G.S. § 50-13.4(c) were designed to create an exception to what is otherwise a presumption in our State that child support obligations terminate upon a child reaching the age of majority—18 years old. In promulgating N.C.G.S. § 50-13.4(c), our legislature intended to provide a means by which children could continue to receive support from their parents or legal guardians, even though they were no longer legally minors. That being the case, we cannot conclude here that the legislature intended to exclude those plaintiffs seeking continued support under N.C.G.S. § 50-13.4(c) from possibly obtaining the cost of their attorney's fees pursuant to N.C.G.S. § 50-13.6.

## V.

[6] Finally, by his fifth assignment of error, the father contends that the trial court erred by accepting as evidence an unsworn letter and report from plaintiff's physician. According to the father, these par-

ticular unsworn documents, which tend to show that the mother suffered from diabetes mellitus and was incapable of working, were inadmissable hearsay because they were only offered for the purpose of proving that the mother indeed had diabetes mellitus and could not work. We disagree.

Rule 801(c) of the North Carolina Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R.Evid. 801(c) (1984). Thus, an out-of-court statement or document is considered hearsay evidence and thereby, inadmissible when the only purpose for a party's proffer of the statement or document is to prove the very contents of that statement or document.

In this case, the two documents drafted and signed by the physician were not offered by the mother nor relied upon by the trial court for the purpose of proving that the mother had diabetes mellitus and that she could not work; rather, the record reveals that the documents were offered and accepted by the court for the limited purpose of corroborating the mother's testimony that she believed she had diabetes mellitus and therefore could not work. Corroborating evidence is considered "evidence supplementary to that already given and tending to strengthen or confirm it," or "additional evidence of a different character to the same point." *Black's Law Dictionary, 5th Ed.* Here, the mother testified during the course of the hearing that she was seeking an increase in child support because she believed she had a diabetic condition. She also submitted to the court information in her sworn Financial Affidavit which tended to show both her belief as to her condition and her belief as to her inability to work. It was based upon this evidence that the trial court decided to accept the medical documents offered by the mother "for the limited purpose only of corroboration of the [mother's] testimony." The challenged documents were therefore not part of the *proof* of the trial court's finding that the mother suffered from an uncontrolled diabetic condition. Accordingly, we find no merit in the father's final assignment of error.

In sum, the order of Judge O'Neal in this case is,

Affirmed.

Judges EAGLES and WALKER concur.