IN RE THE ADOPTION OF K.A.R., A MINOR CHILD

No. COA09-1544

(Filed 20 July 2010)

**1. Adoption— father's consent—reasonable and consistent support**

The trial court did not err in determining that respondent father's consent was necessary for petitioners' proposed adoption of his minor child. Respondent father provided the reasonable and consistent support required to make his consent to the adoption necessary under N.C.G.S. § 48-3-601(2)(b)(4)(II).

**2. Adoption— petition dismissed—jurisdiction—pending appeal—harmless error**

The trial court did not err in dismissing petitioners' petition for adoption. Although the trial court was without jurisdiction to enter the order dismissing the adoption petition because petitioners' appeal from the order concluding that respondent father's consent to the adoption was required was pending, the

error was harmless and the matter was remanded for proper dismissal of the adoption petition.

Appeal by petitioners from orders entered 3 September 2009, 10 September 2009, and 7 October 2009 by Judge William A. Marsh, III in Durham County District Court. Heard in the Court of Appeals 29 April 2009.

*Sandlin & Davidian, P.A., by Deborah Sandlin and Lisa Kamarchik, for petitioner-appellants.*

*Cheri Patrick for respondent-appellee.*

BRYANT, Judge.

Petitioners Katy and Erik Larson appeal from orders entered 3 September 2009, 10 September 2009, and 7 October 2009 in Durham County District Court concluding that respondent Roberto Alvarez, Jr.'s consent was required before any petition for adoption of K.A.R. could be granted. For the reasons stated herein, we affirm in part and remand.

On 28 February 2009, Kelley Ann Richardson gave birth to K.A.R. At the time of K.A.R.'s birth, Richardson was eighteen years old and resided in Durham. Alvarez was twenty years old. The two were not married.

On 2 March 2009, Richardson placed K.A.R. with petitioners. Petitioner Katy Larson, who resided in Georgia, is a relative of Richardson. On 6 March 2009, an adoption petition for K.A.R. was filed in Durham County. On 31 March 2009, petitioners served Alvarez with notice of the proceedings and indicated their belief that his consent to the adoption was not necessary. On 1 April, Alvarez filed an answer stating that his consent was necessary and that he did not consent.

After a hearing held on 10 August 2009 in Durham County District Court, the trial court entered an order on 3 September and amended it for a clerical error on 10 September 2009. In the amended order, the trial court found that Richardson and Alvarez had, since the time Richardson's pregnancy was confirmed, acknowledged Alvarez as the child's biological father. Additionally, Alvarez filed a petition for custody (09 CVD 262) and a petition to legitimate the child (09 SP 803). At the time of K.A.R.'s conception, Alvarez had not completed high school or obtained his G.E.D.; he resided with his mother and step-

**IN RE ADOPTION OF K.A.R.**

[205 N.C. App. 611 (2010)]

father; and he was unemployed. During Richardson's pregnancy, Alvarez attended pre-natal classes and accompanied Richardson to doctor's visits until she requested that he stop. Richardson failed to notify Alvarez that she had gone into labor so that he could be present at the time of birth. Despite this, the two remained in contact. Throughout the pregnancy and after the birth of K.A.R., Alvarez repeatedly stated that he would not consent to an adoption and that he was prepared to raise the minor child with or without Richardson. In November 2008, Alvarez obtained employment earning an initial rate of $8.00 per hour. As soon as Alvarez had an income, he began purchasing equipment and supplies for the child, such as: a car seat, a baby crib mattress, and clothing worth over $200.00. The trial court concluded that Alvarez provided reasonable and consistent support for his minor child in accordance with his financial means, acknowledged paternity, and attempted to communicate with the biological mother; therefore, his consent to the adoption of K.A.R. was required. Petitioners appeal.

---

On appeal, petitioners raise the following questions: did the trial court err in (I) concluding that Alvarez's consent was necessary for the proposed adoption of K.A.R. and (II) dismissing petitioners' action for adoption.

*I*

[1] First, petitioners argue that the trial court erred in determining Alvarez's consent was necessary for the proposed adoption. Specifically, petitioners contend that Alvarez failed to provide the reasonable and consistent support required to make his consent to the adoption necessary under North Carolina General Statutes, section 48-3-601(2)(b)(4)(II). We disagree.

Adoption proceedings are "heard by the court without a jury." N.C. Gen. Stat. § 48-2-202 (2009).

" 'Our scope of review, when the Court plays such a dual role, is to determine whether there was competent evidence to support its findings of fact and whether its conclusions of law were proper in light of such facts.' " *In re Adoption of Cunningham,* 151 N.C. App. 410, 412-13, 567 S.E.2d 153, 155 (2002) (quoting *In re Norris,* 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983), *cert. denied,* 310 N.C. 744, 315 S.E.2d 703 (1984)). This Court is bound to uphold the trial court's findings of fact if they are supported by competent evidence, even if there is evidence to the contrary. *In*

*re Adoption of Byrd*, 137 N.C. App. 623, 529 S.E.2d 465 (2000), *aff'd on other grounds*, 354 N.C. 188, 552 S.E.2d 142 (2001). Finally, in reviewing the evidence, we defer to the trial court's determination of [sic] witnesses' credibility and the weight to be given their testimony. *Leak v. Leak*, 129 N.C. App. 142, 150, 497 S.E.2d 702, 706, *disc. review denied*, 348 N.C. 498, 510 S.E.2d 385 (1998).

*In re Adoption of Shuler*, 162 N.C. App. 328, 330-31, 590 S.E.2d 458, 460 (2004).

The primary purpose of North Carolina General Statutes, Chapter 48, Adoptions, is "to advance the welfare of minors by (i) protecting minors from unnecessary separation from their original parents . . . ." N.C. Gen. Stat. § 48-1-100 (b)(1)(i) (2009). Furthermore, the chapter is to "be liberally construed and applied to promote its underlying purposes and policies." N.C.G.S. § 48-1-100(d) (2009). Under General Statutes, section 48-3-601, the consent of certain individuals is mandatory before a trial court may grant an adoption petition. *See In re Anderson*, 360 N.C. 271, 624 S.E.2d 626 (2006). In circumstances such as these in the instant case, "[t]he consent of an unwed putative father . . . is not obligatory unless he has assumed some of the burdens of parenthood." *Id.* at 276, 624 S.E.2d at 629.

[A] petition to adopt a minor may be granted only if consent to the adoption has been executed by:

. . .

(2) In a direct placement, by:

. . .

b. Any man who may or may not be the biological father of the minor but who:

. . .

4. Before the earlier of the filing of the petition or the date of a hearing under G.S. 48-2-206, has acknowledged his paternity of the minor and

. . .

II. Has provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both, which may include the payment of

medical expenses, living expenses, or other tangible means of support, and has regularly visited or communicated, or attempted to visit or communicate with the biological mother during or after the term of pregnancy, or with the minor, or with both . . . .

N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II) (2009).

Our Supreme Court has stated that "the General Assembly did not intend to place the mother in total control of the adoption to the exclusion of any inherent rights of the biological father." *In re Byrd*, 354 N.C. 188, 196, 552 S.E.2d 142, 148 (2001). In codifying N.C.G.S. § 48-3-601(2)(b)(4)(II), the General Assembly sought "to protect the interests and rights of men who have demonstrated paternal responsibility and to facilitate the adoption process in situations where a putative father for all intents and purposes has walked away from his responsibilities to mother and child . . . ." *Id.* at 194, 552 S.E.2d at 146.

In *In re Byrd*, our Supreme Court made clear that when a putative father seeks to protect his parental interests under N.C.G.S. § 48-3-601(2)(b)(4)(II), "[a]ll requirements of the statute must be met in order for a father to require his consent to an adoption." *Id.* at 198, 552 S.E.2d at 149. "[A]n objective test that requires unconditional acknowledgment and tangible support" best serves the interests of all parties as well as the child. *Id.*

In *In re Byrd*, the respondent—an unwed seventeen year old boy—dated the biological mother while in high school from April to June 1997. In September, three months after the relationship ended, the biological mother informed the respondent that she was pregnant and that he was the father. However, in November the biological mother disclosed to the respondent an uncertainty as to paternity. During the pregnancy, the respondent had held a part-time job earning approximately $80 to $90 dollars per week. He eventually acquired two full-time jobs and retained $50 per week after paying his expenses. On 31 December, the respondent was notified by letter that the biological mother intended to place the child for private adoption, and she requested that the respondent relinquish any parental rights he may have as a putative father. The respondent refused. On 4 March 1998, the mother gave birth to a girl; on 5 March 1998, petitioners filed an adoption petition. In his answer to the adoption petition, the respondent requested custody of the minor child provided he was determined to be the biological father. Blood test results indicated a 99.99% probability that the respondent was the child's biological father. After the adoption petition was filed, the respondent mailed to the biological mother a money order for $100.00 and some baby cloth-

ing. However, from late December 1997 thru the birth of the child the respondent had made no offers of support to the biological mother or the minor child. The trial court concluded that the respondent's consent to the adoption was not required as he had not satisfied all the criteria under N.C.G.S. § 48-3-601(2)(b)(4)(II). In affirming the trial court and the Court of Appeals, our Supreme Court reasoned that, despite the uncertainty as to the child's paternity, the respondent's failure to provide any tangible support to the biological mother prior to the filing of the adoption petition left the tangible support requirement in N.C.G.S. § 48-3-601(2)(b)(4)(II) unsatisfied; therefore, the respondent's consent to the adoption was not required. *Id.* at 196-97, 552 S.E.2d at 149.

In *In re Anderson*, 360 N.C. 271, 624 S.E.2d 626, our Supreme Court held that the putative father's consent to the adoption of his biological daughter was not required because he had failed to provide support within the meaning of N.C.G.S. § 48-3-601(2)(b)(4)(II). *Id.* at 279, 624 S.E.2d at 630-31. The putative father, the respondent—an unwed high school student, earned approximately $240 per week and paid no other expenses other than $100 a month in car insurance at the time he learned the biological mother, Anderson, was pregnant. The Supreme Court acknowledged the trial court's finding that the respondent may have offered Anderson support on a few occasions towards the end of her pregnancy, and that in December of 2002, the respondent tried unsuccessfully to deliver a $100.00 check and a letter declaring his willingness to provide financial assistance to Anderson and the baby. Nevertheless, at no time during the term of pregnancy did the respondent provide any actual support for the mother despite the respondent's purchase of a car for $1,000.00 during that time frame. Three days after the child was born, the respondent received notice that a petition for adoption had been filed. The Supreme Court, in upholding the trial court's conclusion that the respondent's consent was not necessary pursuant to N.C.G.S. § 48-3-601(2)(b)(4)(II), held that the respondent's sporadic and rebuffed offers of support failed to meet the support criteria required under the statute and left the respondent without standing to obstruct the adoption process. *Id.* at 274, 624 S.E.2d at 628.

The *Anderson* Court opined that the respondent could have opened a bank account or established a trust fund for the benefit of the mother or the minor child, thereby establishing a regular and consistent deposit record in accordance with his financial resources. *Id.* In doing so, he would have satisfied the support criteria under

N.C.G.S. § 48-3-601(2)(b)(4)(II). The Court reasoned that N.C.G.S. § 48-3-601(2)(b)(4)(II) "obliges putative fathers to demonstrate parental responsibility with reasonable and consistent payments '*for* the support of the biological mother [. . . or the support of the minor, or both, which may include . . . other tangible means of support].' " *Id.* (citing N.C.G.S. § 48-3-601(2)(b)(4)(II)). The deliberate use of the word "for" rather than "to" suggests the legislature wanted to ensure that a putative father, who makes reasonable, consistent payments of support, could preserve his parental rights even where the biological mother refuses direct assistance. *Id.*

In the instant case, Alvarez, as distinguished from the respondents in *In re Byrd* and *In re Anderson*, independently provided items of support for the child, even after his efforts to provide support and assistance directly to the mother were rebuffed. The *Byrd* Court held that the respondent failed to provide any support within the relevant time frame. *In re Byrd*, 354 N.C. at 197-98, 552 S.E.2d at 149. The *Anderson* Court said the "respondent could have supplied the requisite support [by] . . . opening a bank account or establishing a trust fund . . . in accordance with his financial resources." *In re Anderson*, 360 N.C. at 279, 624 S.E.2d at 630-31. Here, Alvarez did what the trial court found to be reasonable given his means and financial resources; he obtained items—a baby car seat, a baby crib mattress, and baby clothing—that could be used only for the support of the minor child. There are few options available to a young unmarried biological father who has shown in many ways his strong desire to keep his child, and whose efforts to provide direct support to the mother have been rebuffed. Our Court in *In re Anderson* suggested one way a father could provide support independently of the mother; the father in the instant case, as determined by the trial court, has shown another.

While the facts and procedural histories in *In re Byrd* and *In re Anderson* are in many ways similar to the instant case, the bright-line requirement—that the support contemplated by the statute must be provided prior to the filing of the petition—found to be absent in *Byrd* and *Anderson*, distinguishes this case. Here, the trial court found the putative father provided reasonable and consistent support prior to the filing of the petition.

The trial court made the following unchallenged finding of fact:

10. As soon as he had an income, Mr. Alvarez began purchasing equipment and supplies necessary for the care and support of

the minor child. These include a car seat, a mattress, clothing and miscellaneous baby paraphernalia. These purchases continued until approximately two weeks after [K.A.R.'s] birth, when Mr. Alvarez learned of the adoption proceedings.

The trial court also made the following challenged findings of fact:

18. The supplies and equipment purchased for the minor child by Mr. Alvarez over the four months he was employed and prior to the filing of the adoption petition total more than $200, and are therefore a reasonable amount of support provided to the minor child in accordance with Mr. Alvarez's financial means.

19. The purchases on behalf of the minor child began shortly after Mr. Alvarez obtained employment and continued until after [K.A.R.] was born, a consistent showing of Mr. Alvarez's support of his son.

These findings are supported by evidence in the record showing that Alvarez demonstrated parental responsibility prior to the filing of the petition by providing tangible support for the minor child, K.A.R.

The trial court's finding that Alvarez provided reasonable and consistent support in accordance with his financial means is also supported by the record. In *Miller v. Lillich*, 167 N.C. App. 643, 606 S.E.2d 181 (2004), the Court of Appeals upheld the trial court, noting that, notwithstanding the father's lack of employment, he provided financial support to the mother and child by paying medical bills, purchasing items for the future use of the child, and after the birth of the child, provided medicine, diapers, and money on a monthly basis for support of the child. We also held that it was within the trial court's discretion to use the statutory child support guidelines to calculate the father's support requirement in making its determination as to whether the support payments were reasonable and consistent. *Id.* at 647, 606 S.E.2d at 183.

Here, the trial court found that after being informed of the pregnancy, Alvarez obtained employment in November 2008 earning $8.00 per hour for a work week ranging between 30 and 40 hours. Alvarez's monthly gross income was $1,212.40, which the trial court estimated would set the child support obligation at no more than $50.00 a month. Valuing the items purchased by Alvarez at more than $200.00, the trial court concluded that Alvarez provided a reasonable amount of support to the minor child in accordance with his financial means. The trial court also found that because Alvarez' support began shortly

after he obtained employment and continued until after K.A.R. was born, Alvarez's support was consistent. We determine these findings to be supported by the record and therefore binding on appeal. *See In Re Shuler*, 162 N.C. App. at 330-31, 590 S.E.2d 460.

As the Court said in *In re Byrd*, "[w]e [] recognize the importance of fixing parental responsibility as early as possible for the benefit of the child. Yet, fundamental fairness dictates that a man should not be held to a standard that produces unreasonable or illogical results." *In re Byrd*, 354 N.C. at 196, 552 S.E.2d at 147-48. We hold that the trial court's determination that Alvarez's support was reasonable and consistent in accordance with his financial means is supported by evidence in the record, as well as our statutory and case law. Therefore, the trial court did not err in concluding that Alvarez's consent was required before the petition for adoption of K.A.R. could be granted. Accordingly, petitioners' argument is overruled.

## II

**[2]** Next, petitioners argue that the trial court erred in entering an order denying petitioners' petition to adopt K.A.R. after petitioners appealed from the trial court order concluding that Alvarez's consent was required for an adoption to proceed. We agree and hold the error harmless but remand for entry of a proper order.

"When an appeal is perfected . . . it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein . . . ." N.C. Gen. Stat. § 1-294 (2009). "The general rule has been that a timely notice of appeal removes jurisdiction from the trial court and places it in the appellate court. Pending appeal, the trial judge is generally *functus officio*, subject to two exceptions and one qualification . . . ." *McClure v. County of Jackson*, 185 N.C. App. 462, 469, 648 S.E.2d 546, 550 (2007) (internal citations, quotations, and brackets omitted).

> The exceptions are that notwithstanding the pendency of an appeal the trial judge retains jurisdiction over the cause (1) during the session in which the judgment appealed from was rendered and (2) for the purpose of settling the case on appeal. The qualification to the general rule is that the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned and thereby regain jurisdiction of the cause.

*Kirby Bldg. Systems, Inc. v. McNiel*, 327 N.C. 234, 240, 393 S.E.2d 827, 831 (1990) (citations and internal quotations omitted).

Here, on 3 September 2009, the trial court entered an order concluding that Alvarez's consent to the adoption of K.A.R. was required. The order was amended to correct a clerical error on 10 September 2009. Petitioners filed a notice of appeal from the 10 September 2009 order on 15 September 2009. Prior to the entry of the order requiring Alvarez's consent to the adoption, Alvarez filed motions to dismiss the adoption proceeding. A hearing on the motions was held 15 September 2009, and the trial court entered an order dismissing the adoption petition on 7 October 2009, concluding that Alvarez's consent to the adoption was required. Because petitioners timely filed a notice of appeal from the order entered 10 September 2009, the trial court was without jurisdiction to dismiss the adoption petition. *See* N.C. Gen. Stat. § 1-294. However, due to our holding as to issue *I*, this error is essentially harmless. Nevertheless, we remand this case to the trial court for proper dismissal of the adoption petition.

Affirmed in part; Remanded.

Judges ELMORE and BEASLEY concur.