Justice BEASLEY dissenting.
The majority erroneously holds that the evidence in the record is insufficient to support the trial court's ruling that respondent's consent was required before proceeding with the adoption of C.H.M. because of respondent's supposed failure to demonstrate he provided reasonable support within the statutory period. See N.C.G.S. § 48-3-601(2)(b)(4)(II) (2017). This conclusion is in direct contradiction of the applicable standard of review: that this Court must defer to the trial court's findings of fact when those findings are based on competent evidence. Here, the trial court made voluminous factual findings establishing that respondent provided the support necessary to protect his parental rights before the filing of the adoption petition. Because there is sufficient evidence in the record to support the trial court's findings of fact and because those findings of fact support its conclusion of law that respondent provided statutorily adequate support prior to the filing of the petition, I respectfully dissent.
Before addressing the substance of the majority's opinion, I provide a more complete recitation of the facts of this case, as well as a description of the trial court's extensive findings, to better characterize respondent's efforts to protect his parental rights and the deception the birth mother inflicted on respondent during her pregnancy and after the birth of C.H.M.
The District Court, Wake County found that respondent, Venson Allen Westgate, the biological father of a child whom petitioners sought to adopt, had a legal right to require that petitioners obtain his consent to the adoption. Petitioners, Michael and Carolyn Morris, appealed to the Court of Appeals, which unanimously affirmed the trial court.
Respondent, a resident of Illinois, is the biological father of C.H.M.,[1] a child born in *813 North Carolina on 28 June 2013. Respondent and the mother had an on-again, off-again relationship in Illinois, before the mother moved to North Carolina. The mother, who declined to marry respondent, consented to the child's adoption through an agency. Respondent did not consent to the adoption. Petitioners, a Wake County couple, wish to adopt the child. To that end, on 9 July 2013, they filed a Petition for Adoption of a Minor Child in District Court, Wake County. On 23 December 2013, respondent filed a response stating his objection to the adoption.
According to respondent's filing and the trial court's findings, the mother initially told respondent she had been a victim of sexual assault and that she became pregnant as a result. Later, around 25 November 2013, the mother finally told respondent that she had lied about her sexual assault claim. Respondent contended that, although the biological mother finally agreed to respondent's request for a DNA test in November 2013, she told him she had given the child up for adoption without his knowledge. Further, respondent explained that the mother deliberately omitted respondent's name from C.H.M.'s birth certificate, as well as this adoption action, until approximately 24 November 2013. On 27 November 2013, respondent was served by the adoption agency with a Notice of Pendency of Adoption Proceedings and informed of his right to file a response to the Petition. Later, a DNA test paid for by the adoption agency confirmed that respondent is C.H.M.'s biological father.
Respondent's filing included a motion to dismiss the Petition for Adoption, in which he contended that his "lack of custody of the minor child was unknowing and involuntary" and that he "desires to become involved as the parent to the minor child." Respondent asked the court to find that his consent is required for the adoption and dismiss the Petition for Adoption. After respondent filed his response to the Petition, the matter was transferred from the clerk of court to the district court to determine if respondent's consent is necessary.
The trial court heard the matter from 23 to 25 April 2014 and entered an order in District Court, Wake County on 9 February 2015 finding that respondent's "consent is required to proceed with the adoption." The trial court's order contained extensive findings of fact relating to the nature of the relationship between respondent and the birth mother and respondent's actions during the pregnancy and after the birth of C.H.M.
The court's findings of fact relay that the entire relationship between respondent and the mother remained sporadic and that the mother effectively "controlled the relationship and was the only one to initiate break ups." Respondent did not learn that the mother had given birth until almost one month after C.H.M. was born. At the mother's request, respondent met with her in Illinois and he then realized the mother was no longer pregnant. The meeting between respondent and the mother happened "over two weeks after the adoption petition was filed and almost one month after [the mother] placed the minor child for adoption."
The trial court also found that "[o]n November 15, 2013 [the mother] ... finally told [respondent] about the [pending] adoption," at which point he "did everything he was asked to do in order to get a DNA test." At no point did the mother tell respondent that she had placed the child for adoption until she finally agreed to respondent's request for a DNA test in late November 2013. Before this time, she made misrepresentations to respondent that she had been the victim of sexual assault, that "she was raising the minor child with her husband," and that "the baby was in the hospital." The adoption agency did not learn that respondent might be the biological father until the mother confessed to the agency and respondent that she had lied about being sexually assaulted. The agency contacted respondent on 26 November 2013 to advise him of his right to have a paternity test.
In its order, the trial court stated that N.C.G.S. § 48-3-601 sets conditions that, if met, require a putative father's consent to an adoption. That statute reads, in pertinent part, that
a petition to adopt a minor may be granted only if consent to the adoption has been executed by ... the biological father of the minor ... who ... [1] [b]efore the ...
*814 filing of the petition ... has acknowledged his paternity of the minor and ... [2] [h]as provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support, and [3] has regularly visited or communicated, or attempted to visit or communicate with the biological mother during or after the term of pregnancy, or with the minor, or with both....
N.C.G.S. § 48-3-601(2)(b)(4) (2017).
The trial court found "that the major fact in dispute is whether [respondent's] testimony regarding putting money aside for the minor child and [the mother] is credible." The court then made findings of fact on the three statutory conditions set out above, correctly concluding as a matter of law that respondent has met the conditions of section 48-3-601 and thus, his consent for adoption is required.
Specifically, on the second issue, the court found that respondent "provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of the pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support." The court found that during the mother's "pregnancy and after the child's birth [respondent] saved money on a consistent and regular basis and designated this money for the minor child." (Emphasis added.) Moreover, respondent told the mother "that he was saving money for the minor child." The court reasoned that respondent's "never [having] provided any actual financial payments to" the mother or child, was due to the mother's continued refusal to accept such payments; in fact, respondent "wanted to buy items for the minor child," but the mother "demanded that he not tell anyone about the baby."
In direct contradiction of the majority's conclusion that there was insufficient evidence showing respondent fulfilled the support prong before the filing of the adoption petition, the trial court found that "[f]rom the time [the mother] told him that she was pregnant with his child and continuing through the time of the instant hearing, [respondent] made regular and consistent payments into his lock box/safe for the support of the minor child." The payments of around $100 to $140 "were made on a monthly (and sometimes more frequent) basis." Although respondent did not deposit the funds in a financial institution, he deposited them in a safe and "earmarked [them] for the minor child"; moreover, "[n]o other funds were deposited into this safe." In assessing the credibility of respondent's testimony regarding saving money for the benefit of the mother and C.H.M., the court stated it "gave due regard to all evidence adduced at trial" and that "[n]one of the money [respondent] deposited into the safe prior to the filing of the adoption petition was for legal fees or a DNA test." The court further found that because the mother refused to accept respondent's offers of financial support, his "regular and consistent deposits into the safe were a reasonable method of providing support for the minor child and [the mother]."
Finally, the trial court made additional findings of fact that the mother "intentionally misrepresented to the adoption agency ... many important facts relating to the conception of this child," including that "[f]or over four months, [she] intentionally failed to disclose to the agency that [respondent] was a possible father of the child." The court found that all these actions by the mother "prevented [respondent] from having the opportunity to fully exercise his parental rights and obligations." Moreover, the court said that "because of [the mother's] fraudulent and deceptive conduct, [respondent] was prevented from gathering the information necessary to file a custody action prior to the filing of the adoption petition."
On 5 July 2016, the Court of Appeals issued a unanimous opinion affirming the district court. The panel addressed petitioners' specific contention that respondent "failed to satisfy the statutory support requirement imposed by section 48-3-601."
*815 In re Adoption of C.H.M. , --- N.C. App. ----, 788 S.E.2d 594, 597 (2016). The panel concluded that, giving due deference to the trial court's determinations of witness credibility and the weight to be given such testimony, "ample evidence ... support[s] the district court's determination that [respondent] provided reasonable and consistent payments for the support of C.H.M. before the filing of the adoption petition." Id. at ----, 788 S.E.2d at 600. Moreover, the panel concluded that the trial court's "determination that [respondent's] regular and consistent deposits into his lockbox were reasonable in accordance with his financial means was adequately supported by competent evidence." Id. at ----, 788 S.E.2d at 601. For these reasons, the panel affirmed the district court's order. Id. , at ----, 788 S.E.2d at 601. This Court granted discretionary review on 16 March 2017.
The Court of Appeals correctly affirmed the trial court's ruling that respondent's consent was required to adopt C.H.M. "All proceedings under this Chapter must be heard by the court without a jury." N.C.G.S. § 48-2-202 (2017). Therefore, when the trial court acts as fact finder and judge, it must determine "whether there was competent evidence to support its findings of fact and whether its conclusions of law were proper in light of such facts." In re Adoption of Shuler , 162 N.C. App. 328, 330, 590 S.E.2d 458, 460 (2004) (quoting In re Adoption of Cunningham, 151 N.C. App. 410, 413, 567 S.E.2d 153, 155 (2002) (quoting In re Norris, 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983), cert. denied, 310 N.C. 744, 315 S.E.2d 703 (1984) ) ). "[E]ven if there is evidence to the contrary," this Court is bound by the trial court's findings of fact when they are supported by competent evidence. Id. , at 330, 590 S.E.2d at 460 (citing In re Adoption of Byrd, 137 N.C. App. 623, 529 S.E.2d 465 (2000), aff'd, 354 N.C. 188, 552 S.E.2d 142 (2001) ). "Finally, in reviewing the evidence, we defer to the trial court's determination of witnesses' credibility and the weight to be given their testimony." Id. at 331, 590 S.E.2d at 460 (citing Leak v. Leak, 129 N.C. App. 142, 150, 497 S.E.2d 702, 706, disc. rev. denied, 348 N.C. 498, 510 S.E.2d 385 (1998) ); see State v. Williams , 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quoting State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) ) ("In reviewing a trial judge's findings of fact, we are 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' "); see also Sisk v. Transylvania Cmty. Hosp., Inc. , 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) ( "[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if ... there is evidence to the contrary." (first alteration in original) (quoting Tillman v. Commercial Credit Loans, Inc. , 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008) (ellipsis in original) ) ).
The majority holds that the trial court erred in its decision by finding that respondent has met the support prong of N.C.G.S. § 48-3-601. I would hold that the Court of Appeals was correct to reject petitioners' argument and uphold the trial court's ruling. In order to satisfy the three prongs of the adoption consent statute, N.C.G.S. § 48-3-601,
[r]espondent must have acknowledged paternity, made reasonable and consistent support payments for the mother or child or both in accordance with his financial means , and regularly communicated or attempted to communicate with the mother and child. Under the mandate of the statute, a putative father's failure to satisfy any of these requirements before the filing of the adoption petition would render his consent to the adoption unnecessary.
In re Byrd , 354 N.C. 188, 194, 552 S.E.2d 142, 146 (2001) (emphasis added).[2]
"The 'support' required under N.C.G.S. § 48-3-601(2)(b)(4)(II) is not specifically defined"; "however, [such] 'support' is best understood within the context of the statute as actual, real and tangible support , and ... attempts or offers of support do not suffice." Id. at 196, 552 S.E.2d at 148 (emphasis added). For instance, as recognized by this Court five years later, the following facts in In re Byrd , this Court's seminal case on this *816 issue, were insufficient to establish actual, real, and tangible support:
[T]he paternal grandmother [in In re Byrd ] offered O'Donnell, the expectant mother, a place to live and help with medical bills and other costs, all of which O'Donnell declined. On the day O'Donnell gave birth, the putative father purchased a $100 money order for her; however, the money order did not reach O'Donnell until after the petitioners had filed for adoption.
In re Adoption of Anderson , 360 N.C. 271, 276-77, 624 S.E.2d 626, 629 (2006) (discussing and citing In re Byrd, 354 N.C. at 190-91, 552 S.E.2d at 144-45 ). This Court has stated that "attempts or offers of support, made by the putative father or another on his behalf, are not sufficient for purposes of the statute." In re Byrd , 354 N.C. at 197, 552 S.E.2d at 148.
Similarly, in In re Adoption of Anderson this Court held that numerous offers of support by the father were insufficient to show support under the adoption consent statute. 360 N.C. at 278-79, 624 S.E.2d at 630-31. Furthermore, In re Anderson presented additional facts showing that the putative father hired an attorney to send a letter offering financial support to the birth mother. Id. at 279, 624 S.E.2d at 630. In these circumstances, this Court held that the father in In re Anderson had not satisfied the support prong. Id. at 278-79, 624 S.E.2d at 630-31. In doing so, the Court in In re Anderson stated that "our resolution of the instant case does not grant biological mothers the power to thwart the rights of putative fathers." Id. at 279, 624 S.E.2d at 630. Rather, the Court upheld the legislative purpose of requiring "putative fathers to demonstrate parental responsibility with reasonable and consistent payments 'for the support of the biological mother.' " Id. at 279, 624 S.E.2d at 630 (quoting N.C.G.S. § 48-3-601(2)(b)(4)(II) (2005) ). Going on to explain the meaning of "for" in the context of the case, the Court concluded that
respondent could have supplied the requisite support any number of ways, such as opening a bank account or establishing a trust fund for the benefit of [the mother] or their child. Had he done so, [the mother's] intransigence would not have prevented him from creating a payment record through regular deposits into the account or trust fund in accordance with his financial resources.
Id. at 279, 624 S.E.2d at 630-31 (emphasis added).
In contrast, the Court of Appeals upheld a trial court's finding that the father's consent was required in In re Adoption of K.A.R. , and this Court denied review. 205 N.C. App. 611, 613, 696 S.E.2d 757, 759 (2010), disc. rev. denied , 365 N.C. 75, 706 S.E.2d 236 (2011). In that case, the birth mother was eighteen years old, and the father was twenty years old. Id. at 612, 696 S.E.2d at 759. The father continually expressed a desire to participate in the birth mother's and child's lives, even attending prenatal classes and doctor visits until the birth mother requested that he not accompany her any longer. Id. at 612-13, 696 S.E.2d at 759. When the birth mother became pregnant, the father was unemployed and was living with his parents. Id. at 612-13, 696 S.E.2d at 759. Before the child was born, the father found a job, and once he had an income, he purchased items for the baby "such as: a car seat, a baby crib mattress, and clothing worth over $200.00." Id. at 613, 696 S.E.2d at 759. The trial court concluded that the father provided reasonable and consistent support in accordance with his financial means as required under the statute, and the Court of Appeals affirmed the trial court's conclusion. Id. at 613, 696 S.E.2d at 759.
In upholding the trial court's ruling in In re K.A.R. , the Court of Appeals discussed the significance of the language in N.C.G.S. § 48-3-601(2)(b)(4)(II) that "obliges putative fathers to demonstrate parental responsibility with reasonable and consistent payments 'for the support of the biological mother [... or the support of the minor, or both, which may include ... other tangible means of support].' " Id. at 617, 696 S.E.2d at 761 (alterations in original) (quoting In re Anderson , 360 N.C. at 273, 624 S.E.2d at 627 (quoting N.C.G.S. § 48-3-601(2)(b)(4)(II) (2005) ) ). The Court of Appeals concluded that the deliberate "use of the word 'for' rather than 'to' suggests the legislature wanted to ensure that a putative father, who makes reasonable, *817 consistent payments of support, could preserve his parental rights even where the biological mother refuses direct assistance." Id. at 617, 696 S.E.2d at 761. The Court of Appeals further explained that, in codifying N.C.G.S. § 48-3-601(2)(b)(4)(II), "the General Assembly sought 'to protect the interests and rights of men who have demonstrated paternal responsibility and to facilitate the adoption process in situations where a putative father for all intents and purposes has walked away from his responsibilities to mother and child....' " Id. at 615, 696 S.E.2d at 760 (alteration in original) (quoting In re Byrd , 354 N.C. at 194, 552 S.E.2d at 146 ). The statute strikes a balance between these competing interests by ensuring a putative father can maintain his parental interest and by preventing a mother from unilaterally controlling the adoption process, while also allowing for certainty when a child is put up for adoption. See id. at 615, 696 S.E.2d at 760 (" '[A]n objective test that requires unconditional acknowledgment and tangible support' best serves the interests of all parties as well as the child.") (alteration in original) (quoting In re Byrd , 354 N.C. at 198, 552 S.E.2d at 149 ).
As distinguished from the fathers in In re Byrd and In re Anderson , the Court of Appeals reasoned that the father in In re K.A.R. "independently provided items of support for the child, even after his efforts to provide support and assistance directly to the mother were rebuffed." Id. at 617, 696 S.E.2d at 761. By obtaining tangible items, like clothing and a car seat, the father offered reasonable support based on his financial means, in compliance with N.C.G.S. § 48-3-601(2)(b)(4)(II). The Court of Appeals explained that this Court in " In re Anderson suggested one way a father could provide support independently of the mother; the father in the instant case, as determined by the trial court, has shown another." Id. at 617, 696 S.E.2d at 762.
Turning to this case, In re K.A.R. helps to support the trial court's conclusion that respondent provided the requisite support under N.C.G.S. § 48-3-601(2)(b)(4)(II). In fact, it is hard to distinguish the present facts from those of In re K.A.R . Unlike In re Byrd and In re Anderson , in which the respondents only made offers or attempted offers, here the trial court found that respondent actually set aside money for the benefit of C.H.M., similar to the father in In re K.A.R. who actually purchased items for the baby. While the majority in this case discounts respondent's evidence as "insufficient to establish the [respondent] made such payments before the statutory deadline," it is clear from the trial court's findings and this Court's precedent that respondent has indeed fulfilled the statutory requirement. Specifically, the majority finds respondent's evidence incompetent to show both that he fulfilled the support requirement before the deadline and that respondent made reasonable payments as required by N.C.G.S. § 48-3-601(2)(b)(4)(II). The majority is able to come to this conclusion not because respondent's evidence was in fact incompetent or insufficient, but because the majority takes issue with the type of support respondent provided-namely, saving cash in a lockbox. This is evident from the majority's requirement that respondent provide a "precise payment record." The majority makes much ado about respondent's inability to recall the exact amounts placed in the lockbox, respondent's lack of records, and respondent's lack of knowledge as to specific dates of his deposits. Ultimately, however, as already addressed earlier in this opinion, all of the majority's contentions are directly addressed and disproved by the trial court's competent findings of fact based on respondent's own testimony, bank statements, and cash back withdrawal receipts.
Furthermore, there are no specific requirements in the consent statute relating to the form that "support" must take. While the father's actions in In re K.A.R. are similar in kind to respondent's actions of saving money in a lockbox for the benefit of the child, our case law demonstrates a number of ways to satisfy the support requirement. While the In re Anderson opinion specifically referred to bank accounts and trust funds-which surely are methods that would provide a "precise payment record"-these were only examples of possible ways to provide support. See *818 In re Anderson , 360 N.C. at 279, 624 S.E.2d at 630-31. Specifically, this Court stated in In re Anderson that
respondent could have supplied the requisite support any number of ways, such as opening a bank account or establishing a trust fund for the benefit of [the mother] or their child. Had he done so, [the mother's] intransigence would not have prevented him from creating a payment record through regular deposits into the account or trust fund in accordance with his financial resources.
Id. at 279, 624 S.E.2d at 630-31 (emphasis added). Therefore, the statute contemplates that some putative fathers, because of factors such as limited financial means, type of employment, and lack of access to banks, will not necessarily have the ability to establish bank accounts or trust funds.
Moreover, the plain language of N.C.G.S. § 48-3-601(2)(b)(4)(II) requires only that the putative father "[h]as provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both." No language indicates what form a "payment" must take to satisfy the support prong, what method of recordkeeping (if any) must be used, or if certain forms of payment are required over others. Rather, this Court has determined that to satisfy the support prong, the putative father must provide "actual, real and tangible support, and ... attempts or offers of support do not suffice." In re Byrd , 354 N.C. at 196, 552 S.E.2d at 148. As this Court has not defined the form that "actual, real and tangible support" must take, the assessment of what qualifies as actual support is a question for the trial court to determine when considering all the evidence. It is not the business of this Court to reweigh the factual evidence in the record, and that is exactly what the majority has done here.
Consequently, based on the specific evidence presented in this case, I would hold that the act of saving money in a lockbox, just as purchasing baby items in In re K.A.R. , is a valid method of providing support to the birth mother or child. In addition, unlike what the majority contends, the actions by respondent here, as well as those of the respondent in In re K.A.R. , establish reasonable support commensurate with their financial means as contemplated by N.C.G.S. § 48-3-601(2)(b)(4)(II). Possibly, the only distinguishing characteristic between the father's actions in In re K.A.R. and respondent's actions here is that the purchased baby items are more readily targeted to directly benefit the child, whereas cash in a lockbox could be used for a myriad of purposes. Yet, despite the differing characteristics between the contributions made on behalf of the child, applying the proper standard of appellate review, this Court must defer to the trial court's findings of fact when those facts are based on competent evidence. Here, the trial court made extensive findings of fact,[3] ultimately finding that respondent made reasonable and consistent payments based on his financial means and earmarked the savings for the benefit of the child.[4]
Finally, this Court has been careful to stress that a birth mother should not be able to completely control the adoption process. See In re Byrd , 354 N.C. at 196, 552 S.E.2d at 148 ("We also believe that the General Assembly did not intend to place the mother in total control of the adoption to the exclusion of any inherent rights of the biological father."); see also In re Anderson , 360 N.C. at 279, 624 S.E.2d at 630 ("So long as the father makes reasonable and consistent payments for the support of mother or child, the mother's refusal to accept assistance cannot defeat his paternal interest."). This Court's decisions in In re Byrd and In re Anderson recognize that North Carolina's adoption consent statute is flexible enough to allow for a *819 putative father to maintain his parental rights despite the birth mother's intransigence. In the present case, the birth mother essentially attempted to "thwart" respondent's efforts to provide support. As the trial court found in this case, respondent provided adequate support commensurate with his financial means. The majority's decision-reading into the statute additional requirements of record-keeping or formal accounting-is simply not supported by statute or case law. Accordingly, I would affirm the decision of the Court of Appeals, which affirmed the trial court's order requiring the father's consent for C.H.M.'s adoption.
Justices HUDSON and MORGAN join in this dissenting opinion.

C.H.M. is a pseudonym to protect the identity of the juvenile pursuant to N.C. Rule of Appellate Procedure 3.1.

In this case, the only part of the consent statute at issue is the "support" prong.

The trial court relied on, inter alia , respondent's own testimony, copies of conversations via social media between respondent and the birth mother, bank statements and receipts, and testimony from the adoption agency's personnel.

The trial court noted that its findings were limited by the mother's failure to respond to a subpoena to appear at the hearing. The court noted that the mother was then living out of state and was not subject to the court's power to enforce the subpoena.